```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
```
John Vacca, David Perez, Kirk Conaway,
Roy Kohn, as Trustees of Health Fund
917, The Local 917 Pension Fund and
the Local 868 IBT Pension Fund,
Health Fund 917, The Local 917 Pension         MEMORANDUM & ORDER
Fund, and The Local 868 Pension Fund,          09-CV-0097(JS)(ETB)

           Plaintiffs,

    -against-

The Hartz Mountain Corporation and
John Does 1-5,

           Defendants.
```
----------------------------------------X
```
APPEARANCES:
For Plaintiffs:   Daniel T. Campbell, Esq.
                  Susan M. Bruno, Esq.
                  Campbell & Associates, P.C.
                  99 Tulip Avenue, Suite 404
                  Floral Park, NY 11001

For Defendants:
The Hartz Mountain   Jonathan K. Cooperman, Esq.
Corp.                Kelley Drye & Warren LLP
                     101 Park Avenue
                     New York, NY 10178

John Does 1-5        No Appearance

SEYBERT, District Judge:

        Plaintiffs, John Vacca, David Perez, Kirk Conaway, and Roy Kohn ("Trustees") as Trustees of Health Fund 917, the Local 917 Pension Fund and the Local 868 IBT Pension Fund ("Funds") (collectively "Plaintiffs") bring this action pursuant to sections 502 and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132 and 1145, to enforce

the provisions of the trust agreements establishing the Funds and to enforce Defendant Hartz Mountain Corp.'s ("Hartz" or "Defendant") obligation to make contributions to the Funds under the terms of its collective bargaining agreements with Local 917, International Brotherhood of Teamsters, AFL-CIO, ("Local 917") and Local 11, an affiliate of the International Brotherhood of Teamsters ("Local 11") and its obligation to make contributions to the Funds under the trust agreements establishing each Fund. Additionally, Plaintiffs bring this action against Defendants John Does 1-5 pursuant to Sections 404 and 406 of ERISA, 29 U.S.C. §§ 1104 and 1106 for breach of their duties as plan fiduciaries. Pending before the Court is Hartz's motion to dismiss Plaintiffs' second and third claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the following reasons, Defendant's motion is GRANTED.

## BACKGROUND

The Funds have been established pursuant to collective bargaining agreements ("CBAs") entered into between Local 917 and various employers operating in the New York City metropolitan area. The Funds exist to provide welfare/medical and pension benefits for employees covered under CBAs between Local 917 and/or Local 11 and various employers. (Compl. ¶ 6.) On November 16, 2005, Hartz entered into one CBA with Local 917

and Local 11, which set forth the terms and conditions of employment for certain Hartz employees ("Covered Employees"). Under the CBAs, Hartz is obligated to submit monthly reports to Plaintiffs showing the work performed by each of the Covered Employees for that month and to pay the contributions for these Covered Employees as required by the CBAs. Additionally, the CBAs grant the Trustees the right to audit, examine, and make copies of Hartz's payroll books and records in connection with the administration of the Funds. Hartz is liable to the Funds for any delinquencies found during such an audit. (Id. ¶¶ 14, 17.)

During a recent audit, the Funds' payroll examination auditors reviewed Hartz's monthly reports and payroll records covering the period 2002 through 2005. The auditors determined that Hartz had underpaid contributions to the Funds, and after revising certain findings in response to Hartz's objections, concluded that Hartz underpaid its contribution obligation to the Funds in the following amounts:

| | |
|---|---|
| Health Fund 917 | $69,999.55 |
| Local 917 Pension Fund | $ 5,246.77 |
| Local 868 IBT Pension Fund | $ 4,395.00 |
| TOTAL: | $79,641.32 |

(Id. ¶¶ 18-19.) Plaintiffs sent the revised finding for the

Local 868 Pension Fund to Hartz's on or about March 25, 2008, and sent the revised findings for Health Fund 917 and the Local 917 Pension Fund by letter dated July 11, 2008. Then, on July 25, 2008, Daniel T. Campbell, Plaintiffs' counsel, demanded that Hartz remit the contributions owed to the Funds, or face legal action. As of the filing date on the Complaint, Hartz had not paid any of the delinquent contributions. (Id. ¶¶ 20-23.)

In or around June 2006, the Health Fund became aware that one of Hartz's employees had purportedly declined the Health coverage provided by the Health Fund. Plaintiffs argue that the CBAs required Hartz to provide health coverage to all employees, and did not permit employees to decline coverage. By letter dated July 13, 2006, Fund Manager Joann Emmons ("Emmons") advised Hartz that, since its employee could not decline coverage, Hartz must offer health coverage and make contributions for the employee who purportedly "opted out" of coverage. Since 2006, four other employees have declined coverage, and Hartz has not made contributions for these employees. Plaintiff maintains that Hartz owes Health Fund 917 $26,328.00 for delinquent contributions due on behalf of these "opt-out" employees. (Id. ¶¶ 25-30.)

Finally, in or about March 2007, the Health Fund became aware that Hartz had changed health coverage for certain

4

of its employees from family coverage to single coverage. Plaintiffs argue that such action is a violation of the CBAs; in other words, Plaintiffs argue that once an employee has opted for family coverage, that employee may never change from family to single coverage, unless he or she has experienced divorce, death of all dependents, or all dependent children "aged out" of dependent coverage. By letter dated July 11, 2007, Emmons requested documentation to support the changes in coverage from family to single for the applicable employees. Hartz did not submit any documentation, and between March 2007 and December 31, 2007, Hartz paid contributions for single coverage for numerous employees who, according to Plaintiffs, were required to maintain family coverage. As of the filing date of the Complaint, Plaintiffs argue, Hartz owes the Health Fund $243,371.00 in unpaid contributions for family health coverage for these employees.

## DISCUSSION

I. <u>Standard Of Review Under Rule 12(b)(6)</u>

On a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must satisfy a flexible plausibility standard, which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible. <u>Iqbal v. Hasty</u>, 490 F.3d 143,

157-58 (2d Cir. 2007). The complaint must be enough to raise a right to relief above the speculative level. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 1965 (2007). This standard does not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." Id. at 1974. In applying this standard, the district court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of plaintiff. See Cleveland v. Caplaw Enter., 448 F.3d 518, 521 (2d Cir. 2006); Nechis v. Oxford Health Plans, Inc., 421 F.3d 96, 100 (2d Cir. 2005). Additionally, the Court is confined to the allegations contained within the four corners of the complaint. Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 71 (2d Cir. 1998.) However, the Court may examine any written instrument attached to [the complaint] or any statements or documents incorporated in it by reference as well as any document on which the complaint relies heavily. Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002). Of course, it may also consider matters of which judicial notice may be taken under FED. R. EVID. 201. Kramer v. Time Warner, Inc., 837 F.2d 767,773 (2d Cir. 1991).

## II. Plaintiffs' Second And Third Claims Are Unsupported By The CBA

Although the Court is mindful of its general obligation to limit its inquiry to the four corners of the Complaint, both parties make repeated references to the provisions of the CBA. As a result of these references, the Court finds that, as part of its ruling on Hartz's Rule 12(b)(6) motion, it may examine the CBA as a written instrument incorporated by reference and as a document on which the Complaint relies heavily. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002).

Article I of the CBA states that "This Agreement represents a complete settlement of all issues raised between the parties in collective bargaining negotiations and shall be binding upon the Union, the employees, and the Employer." (CBA, Art. I, Section 1.) Article XXIX covers Health and Welfare Benefits, and states in relevant part:

> Section 1. (a) Effective January 1, 2006 the Employer shall contribute $739.00 per month per employee to Health Fund 917 for each employee enrolled in Group 4KK (family coverage) or $308.00 per month per employee for each employee enrolled in Group 4II (single coverage) (as provided herein), subject to Article XXIX, Section 4 of this Agreement.
>
> . . . .

(h) Subject to the employee's Single Share Amount or Family Share Amount, the parties agree that the Employer shall pay the Employer's contribution rate for family coverage and the Employer shall pay for single coverage for employees who do not meet the requirement for family coverage. The parties further agree that the Employer shall have the right on a periodic basis to require each employee seeking and each employee that has had family coverage to demonstrate with satisfactory documentation his or her family status and the dependent status of all family members. Such documentation shall include but not be limited to marriage and birth certificates, social security numbers of the employee's dependents and family members and a sworn statement from the employee stating that such documents are to the best of his/her knowledge true and correct (a "Family/Dependent Status Certification"). The Company's determination of family or dependent status shall be subject to the grievance and arbitration procedures of this Agreement. The Company shall notify the Health Fund 917 and the Union as soon as possible but no later than five (5) business days after an employee fails to provide a Family/Dependent Status Certification or changes his or her spouse or dependents, provided the Company has received notice of same.

. . . .

Section 4. (a) Payment to the Health Fund 917 and the Local 917 Pension Fund will be made hereunder for each employee covered by the Agreement who:

(1) Has worked for 80 hours in the previous month (Health Fund 917 only), and

(2) Who has completed six (6) months of

8

> employment, and
>
> (3) Who has timely signed a wage assignment for the employee's share of Health Fund 917 contributions and delivered same to the Employer, where applicable (Health Fund 917 only) (a "Wage Assignment"), and
>
> (4) Who has submitted the Family/Dependent Status Certification, together with documentation, provided such Certification has been requested and approved by the Employer (Health Fund 917 only).
>
> . . . .
>
> (c) The parties agree that an employee who is not eligible for Health Fund 917 benefits because he or she failed to provide a Wage Assignment shall not be eligible to participate in the Health Fund 917 for single or family coverage, where an employee contribution is required under this Agreement, for the duration this Agreement, except where an eligible employee has a new dependent and where such employee timely provides a Family/ Dependent Status Certification.

(CBA, Art. XXIX, Sections 1, 4.) From these provisions, Plaintiffs argue: (1) Covered Employees are not permitted to waive coverage, and must be enrolled in either single or family coverage; (2) even if a Covered Employee waived coverage, Hartz must make contributions to the Funds for all Covered Employees, regardless of whether they obtained single, family, or no coverage at all; (3) once obtaining family coverage, Covered Employees are <u>not</u> permitted to change from family to single

9

coverage, unless they experience divorce, death of all dependents, or all dependent children "aged out" of dependent coverage; and (4) even if Covered Employees were permitted to change from family to single coverage, Hartz must continue to make payments to the Funds as if the Covered Employees elected family coverage.

In opposition to Hartz's motion, Plaintiffs first misstate the law of this jurisdiction, and cite to, inter alia, a case from the Ninth Circuit Court of Appeals, and a Supreme Court case, with questionable precedential value, from 1974. Beyond these references, Plaintiffs essentially ask the Court to not only accept all facts alleged in the Complaint as true, but also to accept their legal conclusions as true, and read into the CBA language that does not appear therein; specifically, the CBA does not contain, and Plaintiffs, therefore, cannot cite to, language supporting their second and third claims.

With regard to Plaintiffs' second claim, none of the CBA's terms require all Covered Employees to elect single or family coverage. Moreover, one provision, cited above, specifically contemplates that not all Covered Employees will have coverage. (See CBA, Art. XXIX, Section 4(c).) Additionally, with regard to Plaintiffs' third claim, the CBA's language sets out qualifying events, which permit Covered

Employees to elect family, rather than single coverage. But this same language does <u>not</u> require Covered Employees to maintain family coverage for eternity, barring one of the qualifying events. Plaintiffs' urging of the Court to read in these additional provisions is not only unsupported by the text, but also a request to suspend common sense. This the Court will not do.

<u>CONCLUSION</u>

Having found that Plaintiffs fail to satisfy Rule 12(b)(6)'s plausible flexibility standard with regard to their second and third claims, the Court GRANTS Defendant's motion, and hereby DISMISSES Plaintiffs' second and third claims.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:    March <u> 30 </u>, 2010
              Central Islip, New York